ST. JOHN'S HOSPITAL MEDICAL STAFF et al., Respondents
v. ST. JOHN REGIONAL MEDICAL CENTER, INC.,
Appellant

(245 N.W.2d 472)

(File No. 11746. Opinion filed September 3, 1976)

Glenn A. Fingerson and Everett E. Hoyt, Huron, for plaintiffs and respondents.

James E. Doyle, of Doyle & Bierle, Yankton, Horty, Springer & Mattern, Pittsburgh, Pa., for defendant and appellant.

David A. Gerdes, of May, Porter, Adam, Gerdes & Thompson, Pierre, for amicus curiae, South Dakota Medical Association.

MILLER, Circuit Judge.

St. John's Hospital Medical Staff (hereinafter referred to as medical staff) is an unincorporated association whose members are physicians duly licensed to practice medicine in South Dakota, holding medical staff privileges at and utilizing the facilities of the St. John Regional Medical Center, Inc., of Huron, South Dakota. St. John Regional Medical Center (hereinafter referred to as medical center) is a South Dakota corporation, incorporated under the laws regulating nonprofit corporations and is authorized to operate in the State of South Dakota.

This is an action for declaratory judgment under SDCL 21-24-1 et seq. It was commenced by the medical staff on June 25, 1973, asking the trial court to determine the rights and duties of the parties under an agreement designated as the "Bylaws, Rules, and Regulations of St. John's Hospital Medical Staff" (hereinafter referred to as medical staff bylaws) as those bylaws related to the corporate bylaws (hereinafter referred to as medical center bylaws) enacted by the defendant. Plaintiffs requested the trial court to compel the defendant to abide by the provisions of certain medical staff bylaws and to invalidate the

purported changes unilaterally made by the medical center in such bylaws. The trial court granted the requested relief and the medical center appealed. On appeal, the medical center argues (1) that the trial court erred in holding that a legal contract existed between the medical staff and the medical center by reason of the medical staff bylaws, and (2) that the medical staff lacks the attributes of a legal entity necessary to commence this action.

In 1947, and prior thereto, there were two hospitals operating in Huron; one was Sprague Hospital, operated by the Huron Clinic Group and the other was the Tschetter Hospital, operated by the Tschetter-Hohm Clinic Group. Other physicians practicing in the community but not associated with either group constituted a third group. In 1944, the Huron Clinic Group encouraged the Franciscan Sisters of Chicago to come to Huron and construct a hospital which is now the medical center. At this same time, plans were being made and steps were being taken by the Tschetter-Hohm Group to build a hospital in Huron. Because of economic factors, however, the Tschetter-Hohm Group abandoned its plans to construct a competing hospital and joined in the construction of the medical center. In October 1947, as construction of the medical center neared completion, the Sisters of the Franciscan Order proposed certain medical staff bylaws to regulate the affairs of the physicians wanting to use the hospital. These bylaws were taken from a book on hospital organization and management.[1] They were printed and distributed to the doctors of the area who were considering association with the hospital. The proposed medical staff bylaws contained an "Amendment Article" and an "Equally Binding Article." The interpretation and effect of these articles formulate the main issues of this action. The "Amendment Article" provides:

"Article VIII

"These by-laws may be amended after notice given at any regular meeting of the staff. Such notices shall be laid on the table until the next regular meeting and shall require a two-thirds majority of those present for adoption. Amendments so made shall be effective when approved by the governing body."

1. McKechrine, Hospital Organization and Management.

The "Equally Binding" article provides:

"Article IX

"These by-laws shall be adopted at any regular meeting of the staff and shall become effective when approved by the governing body of the hospital. They shall when adopted and approved, be equally binding on the governing body and the staff."

After a great deal of discussion concerning these two provisions, as well as provisions relating to the internal rotation of staff, the medical staff bylaws were adopted by the medical staff and approved by the medical center.

These medical staff bylaws were in effect from 1947 until 1972. During that time, various amendments were made to them in accordance with the amendment procedure prescribed. In 1972, the medical center wished to make certain changes in the bylaws.[2] The attempted changes were unacceptable to the medical staff and an impasse developed. Out of this impasse springs the present lawsuit.

On November 24, 1972, the board of directors of the medical center unilaterally adopted new medical staff bylaws which were *not* approved by the medical staff. The medical center now insists that the medical staff is bound by the bylaws so adopted. The medical staff contends and the trial court held that the 1972 revised medical staff bylaws are null and void by reason of the fact that they were not enacted according to the provisions set out in the original 1947 medical staff bylaws.

The main issue raised in this appeal is whether the board of directors of the medical center has the power to amend the 1947 medical staff bylaws without the participation and approval of the medical staff as provided for in Article VIII of the medical

---

2. E.g., one change would allow the Chief Executive Officer of the medical center to temporarily suspend the clinical privileges of a staff physician upon a determination that the action must be taken immediately in the best interests of the patient care in the medical center. Another change would require medical center approval of all officers of the medical staff. These examples are for illustrative purposes only.

staff bylaws. The medical center argues that the trial court erred in holding that a legal contract existed between the medical staff and the medical center by reason of the original 1947 medical staff bylaws. It raises two policy arguments in support of this contention: the power to amend the articles must be lodged in the directors in order (a) to avoid impending loss of accreditation, and (b) to avoid the possibility of independent hospital liability in some future case of malpractice. After a review of the record, we find these arguments to be without merit. The trial court specifically held that there was no evidence that the hospital would lose accreditation if it were not allowed to revise the medical staff bylaws. Further, the medical center's assertions regarding independent liability are premature and not vital to this appeal. We therefore decline to decide that issue.

■ The medical center additionally argues that the medical staff lacks the attributes of a legal entity necessary to commence this action. As stated above, the medical staff represents an unincorporated association of the individual physicians holding medical staff privileges at the medical center. SDCL 21-24-2 provides that:

> "The word 'person' wherever used in [the declaratory judgment chapter] shall be construed to mean any * * * unincorporated association, or society * * of any character whatsoever."

Therefore, plaintiff medical staff is a proper party to bring this action. Cf. Schallenkamp v. Stevens, 1965, 81 S.D. 573, 138 N.W.2d 657. See also SDCL 2-14-2(16).

The remaining question to be resolved is whether the trial court erred in holding that the medical staff bylaws adopted and approved by both the medical center and the medical staff constitute a contract.

■ As a general rule, the bylaws of a corporation, so long as adopted in conformity with state law, constitute a binding contract between the corporation and its shareholders. Allied Supermarkets, Inc. v. Grocer's Dairy Company, 1973, 45 Mich.App. 310,

206 N.W.2d 490, 493, affirmed 1974, 391 Mich. 729, 219 N.W.2d 55.

■ An analogous rule in the area of medical staff bylaws is found in Berberian v. Lancaster Osteopathic Hospital Association, Inc., 1959, 395 Pa. 257, 149 A.2d 456, 458, where the court stated that "[t]he relationship between a hospital association and a member of the hospital's staff is based on contract * * *." The court continued:

> "While [the doctor's] relationship to the hospital was not that of membership in a voluntary organization, nevertheless he and the hospital had, in legal contemplation, entered into a contract whereof the provisions of the staff by-laws, as approved by the hospital's board of directors, constitute the legally binding terms. In the circumstances present, the defendant corporation is bound by the staff by-laws just as much as a voluntary association is bound by the provisions of its by-laws. In both instances, the respective organizations have enacted and approved the by-laws which are an integral part of the contractual relationship between such organizations and their members or ones holding under them." 149 A.2d at 459.

See also Joseph v. Passaic Hospital Ass'n, 26 N.J. 557, 141 A.2d 18. In the present case, we hold that the 1947 medical staff bylaws do constitute a contract which is, by its express terms, subject to amendment when the amendment is agreed to by both the medical staff and the medical center.

■ The principles which governs the construction of contracts also govern the construction and interpretation of corporate bylaws. State v. Johnson, 1963, 21 Wis.2d 482, 124 N.W.2d 624, 626, 627. See also 18 Am.Jur.2d, Corporations, § 168, p. 699. One such construction principle is that:

> " * * * where the terms of a contract are plain and unambiguous, the duty of the court is to construe it as it stands, giving effect to the plain meaning of the language used * * *." State v. Johnson, 124 N.W.2d at 626-627.

In the instant case, Article IX of the 1947 medical staff bylaws, governing the effect that their approval shall have, provides that:

"* * * They shall when adopted and approved be equally binding on the governing body and the staff."

The medical staff bylaws were so adopted and approved. Therefore, both the medical staff and the medical center are bound by them until they are amended in accordance with the procedure set out in Article VIII as hereinbefore set forth so long as these bylaws are in conformity with state law. State v. Johnson and Berberian v. Lancaster Osteopathic Hospital Association, Inc., supra.

A review of South Dakota law does not disclose any such nonconformity. SDCL 47-22-63[3] grants the corporation power to make or alter bylaws for the administration and regulation of corporate affairs, so long as such bylaws are not inconsistent with the corporate charter or state laws. SDCL 47-22-33 carries this power one additional step in that:

"* * * The power to alter, amend or repeal the bylaws or adopt new bylaws shall be vested in the board of directors *unless otherwise provided in * * * the bylaws.* The bylaws may contain any provisions for the regulation and management of the affairs of a corporation not inconsistent with law or the articles of incorporation." (emphasis supplied)

In the present case the medical staff bylaws did so otherwise provide.

Clearly, then, South Dakota statutes recognize the power in a corporation to delegate a voice in the adoption of new bylaws to another entity. Such is the case here. The original articles of incorporation and medical center bylaws authorize the medical

---

3. SDCL 47-22-63. "Each corporation shall have power to make and alter bylaws, not inconsistent with its articles of incorporation or with the laws of this state, for the administration and regulation of the affairs of the corporation."

staff to promulgate medical staff bylaws.[4] These medical staff bylaws call for a specific amendment procedure which must be followed. The medical center by ignoring the procedure set forth in Article VIII and by not including the medical staff in the attempted bylaws amendment has breached this contractual relationship with the medical staff.

It is therefore the holding of this court that the 1947 medical staff bylaws, after approval by the medical center, were binding upon the medical center and must be amended in accordance with Article VIII of those bylaws. Therefore, the medical staff bylaws unilaterally adopted by the medical center are null and void.

Affirmed.

DUNN, C. J., and WOLLMAN and COLER, JJ., and BRAITHWAITE, Circuit Judge, concur.

MILLER, Circuit Judge, sitting for WINANS, J., disqualified.

BRAITHWAITE, Circuit Judge, sitting as a member of the Court.

ZASTROW, J., not having been a member of the court at the time this case was orally argued, did not participate.

---

4. The medical center bylaws provided, before amendment:
   "There shall be By-Laws, rules and regulations for the Medical Staff setting forth its organization and government. Proposed By-Laws, rules and regulations may be recommended by the Medical Staff, but only those adopted by the Board of Directors shall become effective."