**TERRE HAUTE REGIONAL HOSPITAL, INC.** and **Hospital Corporation of America, Defendants-Appellants,**

v.

**Sa'd EL–ISSA, M.D., Plaintiff-Appellee.**

**No. 1–1283A403.**

Court of Appeals of Indiana,
First District.

Nov. 26, 1984.

Rehearing Denied Jan. 4, 1985.

John D. Nell, Wooden, McLaughlin & Sterner, Indianapolis, for defendants-appellants.

Frederick Wm. LaCava, Maureen E. O'Brien, Hall, Render, Killian, Heath & Lyman, Indianapolis, for amicus curiae: (The Indiana Hosp. Ass'n, Inc.).

Eric A. Frey, Wolfe, Frey, Hunt & Olah, Phillip I. Adler, Terre Haute, John M. Baumunk, Brazil, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

This is an appeal of a final judgment entered by the Clay Circuit Court on August 23, 1983, in the amount of $400,000 following a jury verdict in favor of the appellee in that amount.

We reverse.

## FACTS

Doctor Sa'd El-Issa is a board certified surgeon with an unlimited license to prac-

tice medicine in Indiana. During the entire period in question, Dr. El-Issa was a member of the active staff at Terre Haute Regional Hospital (Regional) in Terre Haute, Indiana.[1] Regional is a private for-profit corporation whose sole shareholder is Hospital Corporation of America (HCA).

Doctor El-Issa testified that between 1975, when he joined the active staff at Regional, and 1980, he performed five to ten fiberoptic bronchoscopies each year. In 1979 and 1980, Dr. El-Issa received continuing education credits for short courses in fiberoptic bronchoscopy and other endoscopic procedures.[2] In March 1980, following this training, he requested privileges in endoscopic procedures at Regional. In June 1980, Dr. El-Issa filed an application for reappointment to Regional's active staff for the two year period July 1, 1980 to June 30, 1982. This application also contained a request for various privileges including some endoscopic privileges. It is the manner in which Regional dealt with these two requests for privileges which caused Dr. El-Issa to institute this suit.

Essentially, Dr. El-Issa argues that the bylaws of the Medical and Dental Staff of Regional, which set out the procedures for dealing with requests for privileges, constitute a contract the breach of which entitles him to damages. Regional, on the other hand, argues that the issue of whether the bylaws form a legally enforceable contract was not properly before the trier of fact. Alternatively, Regional and HCA raise numerous arguments attacking the judgment. Additional facts will be developed below.

## ISSUES

The appellants raise numerous issues in their brief. Due to our resolution of this appeal, we need only discuss the following issues:

1. Was the issue of whether the bylaws of the Medical and Dental Staff form a legally enforceable contract properly before the jury.

2. Whether the bylaws of the Medical and Dental Staff form a legally enforceable contract between the hospital and individual members of its staff.

3. Whether there was sufficient evidence presented at trial to support a finding by the jury that the hospital failed to substantially comply with the bylaws.

4. Whether there was sufficient evidence to support a finding by the jury that the injury suffered by the appellee was caused by the appellants' failure to substantially comply with the bylaws.

## DISCUSSION AND DECISION

### Issue One

Regional and HCA argue initially that they were denied a fair trial because the jury was instructed on a theory of breach of contract when that theory was not included in the pleadings, pretrial contentions of the parties, or an amendment pursuant to Indiana Rules of Procedure, Trial Rule 15(B). If the appellants are correct in their contention, the judgment must be reversed and no further discussion is necessary. Thus, it is essential that we resolve this issue first.

Doctor El-Issa's two count complaint and the contentions he filed with the court prior to trial consist largely of factual allegations that Regional and HCA violated the bylaws. In neither document did Dr. El-Issa delineate the specific theory or theo-

1. El-Issa was also on the courtesy staff at Union Hospital in Terre Haute during this period. Prior to 1975, El-Issa was a member of the active staff at Union. According to the record, he moved his primary practice back to Union Hospital sometime in early 1981.

2. Endoscopy is the inspection of the interior of a body cavity by means of an endoscope intro-

duced through a natural opening leading to the cavity. 2 J. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder*, E-70 (1984). Fiberoptic bronchoscopy is an endoscopic procedure involving the use of a fiberscope to visually examine the bronchrus or bronchi. *Id.* at B-114.

ries on which he predicated recovery.[3] Thus, the breach of contract theory was properly presented to the jury only if the parties tried that issue by implied consent.

Our court set out the parameters of implied consent to litigation of issues not raised prior to trial in *Indianapolis Transit System, Inc. v. Williams*, (1971) 148 Ind.App. 649, 269 N.E.2d 543, *trans. denied*. The pleadings, contentions of the parties and pretrial orders set out only a preliminary guide to the conduct of trial. Either party may, at any time, demand strict adherence to those issues raised prior to the commencement of trial. If the trial court permits the introduction of an issue not raised prior to trial, an objecting party is entitled to a reasonable continuance in order to prepare to meet the newly raised issue. However, where the trial has ended without objection, the evidence actually presented controls. *Ayr-Way Stores, Inc. v. Chitwood*, (1973) 261 Ind. 86, 91, 300 N.E.2d 335, 339; *Svetich v. Svetich*, (1981) Ind.App., 425 N.E.2d 191, 193, *trans. denied; Urbanational Developers, Inc. v. Shamrock Engineering, Inc.*, (1978) 175 Ind.App. 416, 431, 372 N.E.2d 742, 751, *trans. denied.* The jury may then be properly instructed on any theory of recovery which the evidence supports.

This broad principle is not without its boundaries however. New issues cannot be interjected under the pretense that the evidence is relevant to an already pleaded issue. *Svetich*, at 194. A party will not be deemed to have impliedly consented to the trial of an unpleaded issue unless he has been given some notice of the existence of that issue. *Svetich*, at 194; *Elkhart County Farm Bureau Co-op Association, Inc. v. Hochstetler*, (1981) Ind.

App., 418 N.E.2d 280, 285.[4] Thus, we must determine whether Regional and HCA were aware that a new theory of recovery, based on breach of contract, was being brought into the trial.

Regional and HCA were given notice several times during the course of trial that a new theory of recovery based on breach of contract was being litigated. At the outset of the trial, the trial court gave a series of preliminary instructions as required by Indiana Rules of Procedure, Trial Rule 51(A). One of those instructions informed the jury that the plaintiff was contending that the violations of the bylaws constituted a breach of, or interference with, his contract with the hospital. This instruction was given to the parties on the first day of trial, but they were not read to the jury until two days later. Neither defendant objected to the reading of this instruction. In fact, the affidavit of the trial judge indicates that both parties acquiesced to the giving of Preliminary Instruction No. 3. *See* Supplemental Record at 4. Thus, at this early stage in the trial, Regional and HCA were aware that a breach of contract theory was being presented.

The possibility of pursuing a breach of contract theory of recovery was also broached during the voir dire examination of potential jurors. Doctor El-Issa's attorneys questioned potential jurors concerning the possibility of the bylaws constituting a contract, the violation of which would be a breach. Affidavit of Trial Judge, Supplemental Record at 4. The defendants did not object to this line of questioning. Thus, Regional and HCA were again given notice that a contract theory was going to be litigated during trial.

---

**3.** In Dr. El-Issa's brief in Opposition to Defendant's Motion for Summary Judgment, which was filed approximately three weeks prior to trial, he characterizes Count I of his complaint as a request for declaratory judgment that the actions of Regional and HCA violated the bylaws of the hospital. In the same brief, Dr. El-Issa characterizes Count II as a malicious interference with a trade or profession count. Record at 161. After the court denied the appellant's Motion for Summary Judgment, but be-

fore the preliminary instructions were given to the jurors, Dr. El-Issa withdrew his request for declaratory relief.

**4.** The purpose behind this rule should be obvious. Unless the opposing party is aware that a new issue is being introduced during the trial, he will have no opportunity to object or to seek a continuance to prepare to meet the new issue should his objection be overruled.

The breach of contract theory was again injected into the litigation after Dr. El-Issa's case-in-chief. At the close of El-Issa's case-in-chief Regional and HCA moved for judgment on the evidence. During arguments on the motion, Dr. El-Issa contended that breach of contract was a recognizable theory in the case. Regional and HCA argued that no contract theory was included in the pleadings or contentions of the parties. In addition, they informed the court that they were not consenting to the trial of the contract theory. No other affirmative action was taken by the appellants.[5]

It is clear that Regional and HCA had notice that a contract theory of recovery was being injected into the litigation by Dr. El-Issa. They did not object or seek a continuance to meet the unpleaded theory. The breach of contract theory was, therefore, tried by implied consent. Regional and HCA cannot now complain that the jury should not have been instructed on that issue.

*Issue Two*

The appellants next argue that, even if the contract theory was properly before the jury, the bylaws do not form a contract. In this regard, the defendants raise three sub-issues. First, they argue that the by-laws should not be held to be a contract. Second, Regional and HCA contend that they did not manifest their assent to be bound by the bylaws as a contract. Finally, they assert that there is a lack of mutuality of obligation and, consequently, the bylaws cannot be a binding contract. An appellate court of this state has never before discussed this important issue. It is necessary, however, to consider a procedural matter first.

Technically, Regional has waived any argument that the bylaws of the Medical and Dental Staff do not constitute a contract between the hospital and members of its staff. The trial judge instructed the jury as follows:

"Plaintiff's Instruction No. 6

I instruct you, members of the jury, that the relationship between a hospital corporation and a member of the hospital's medical staff concerning the member's reapplication for privileges is based on contract. The by-laws which have been adopted by the hospital form the contractual relationship between the hospital and the members of the medical staff.

Before determining whether to exercise its authority in curtailing or limiting the clinical privileges of a member of the staff, it is necessary that the hospital follow such by-law provisions.

I instruct you that where a particular procedure, including procedural safeguards, is spelled out by the by-laws, this procedure is the exclusive method which the hospital is required to follow, and if a procedure is provided for in the by-laws, that procedure must be substantially and exclusively followed.

Therefore, if you find under the facts of this case that the defendants violated the by-laws and procedural safeguards afforded to plaintiff, then such conduct on the part of the defendant's would constitute a breach of the contract between plaintiff and the defendants."

Record at 235. The appellants' objection to this tendered instruction was contained in the following statement:

"Defendants object to Plaintiff's Instruction No. 6 and the fact that its misstatement of the law and also objects on the basis of the use of a contract theory since no such theory was pleaded or stated in the contentions of this case. It is also incorrect to give this instruction because it is contrary to the law because the by-laws do not provide the exclusive method which is to be followed."

5. During the arguments on Regional's motion for judgment on the evidence, the trial court chose not to determine what specific issues were involved in the case. He did, however, note that the appellee's complaint did not delineate specific theories of recovery. The judge decided to wait until after arguments on final instructions to determine upon what issue to instruct the jury.

Record at 242–43. Thus, the question presented to this court is whether their objection is sufficiently specific to satisfy the requirements of Indiana Rules of Procedure, Trial Rule 51(C).

Trial Rule 51(C) lays down an important requirement for the presentation of issues for appeal. It states in part:

"No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

Trial Rule 51(C).

 The purpose of T.R. 51(C) is to protect the trial court from inadvertent error. *Conley v. Lothamer,* (1971) 150 Ind. App. 356, 361, 276 N.E.2d 602, 605. Thus, the objection to the instruction must be sufficiently specific to make the trial judge aware of the alleged error before he reads the instruction to the jury. *Scott v. Krueger,* (1972) 151 Ind.App. 479, 492, 280 N.E.2d 336, 345, *trans. denied; Conley,* at 361, 276 N.E.2d at 605. Failure to comply with the requirements of T.R. 51(C) results in the waiver of any error in the giving of the instruction.

 The appellants did not comply with the requirements of T.R. 51(C). They merely objected that the instruction was a misstatement of the law without indicating in what manner it was a misstatement of the law. Their objection did not specifically state that the instruction was incorrect because the bylaws do not constitute a contract. Thus, no error was preserved for review. However, even if the appellants had preserved the alleged error, their arguments that the bylaws do not form a contract are not convincing.

Regional and HCA appear to argue first that the Medical and Dental Staff Bylaws should not be held to constitute a contract. Initially, they cite us to *Yarnell v. Sisters of St. Francis Health Services,* (1983) Ind. App., 446 N.E.2d 359, *trans. denied,* as support for this position. They contend that in *Yarnell* this court had an opportunity to characterize hospital staff bylaws as

a contract and chose not to. Appellants, however, read too much into the holding of *Yarnell.* The issue of whether or not the bylaws constituted a contract was not presented to the court in that case. Thus, that case provides us with no precedent applicable to the issue presented here. Cases from other jurisdictions cited by the appellants are equally unpersuasive. In *Ponca City Hospital, Inc. v. Murphree,* (1976) Okla., 545 P.2d 738, the court specifically refused to reach the question of whether the bylaws constituted a contract. *Ponca City Hospital,* at 742. Appellants also refer us to *Weary v. Baylor University Hospital,* (1962) Tex.Civ.App., 360 S.W.2d 895. *Weary* does not actually determine whether the bylaws form a contract. What it does say is that the hospital board had unlimited power to control appointment to the staff regardless of what the bylaws say. *Weary,* at 897. Finally, appellants cite to *Manczur v. Southside Hospital,* (1959) 16 Misc.2d 989, 183 N.Y. S.2d 960. This New York trial court opinion did find that the bylaws of the hospital did not constitute a contract. *Manczur,* at 991, 183 N.Y.S.2d at 962. However, this case can be differentiated from the situation presented to us. The court in *Manczur* specifically found that the bylaws in question there did not obligate the hospital to follow them. *Manczur,* at 991, 183 N.Y. S.2d at 962. As will be pointed out below, Regional did in fact obligate itself to follow the bylaw provisions at issue here.

 Doctor El-Issa's brief and our own research reveal a number of decisions from other jurisdictions which have found that the bylaws of the hospital staff do constitute a contract. *See, e.g., Berberian v. Lancaster Osteopathic Hospital Ass'n, Inc.,* (1959) 395 Pa. 257, 149 A.2d 456; *Adler v. Montefiore Hospital Ass'n,* (1973) 453 Pa. 60, 311 A.2d 634, *cert. denied* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974); *St. John's Hospital Medical Staff v. St. John Regional Medical Center, Inc.,* (1976) 90 S.D. 674, 245 N.W.2d 472. These cases are, on the whole, more persuasive than those referred to by Regional and

HCA. Thus, we hold that hospital staff bylaws can constitute a contract between the hospital and its staff.

■ In their second argument, appellants urge that the bylaws cannot constitute a contract because they did not manifest their intent to be bound by them alone. They point out that the hospital retained the power to unilaterally set "current hospital policies." Additionally, authority for final action is specifically reserved for the Board of Trustees by the bylaws. However, the bylaws also indicate that Regional intended to be bound by the terms of those bylaws.

The Medical and Dental Staff Bylaws provide:

"These Bylaws, together with the appended Rules and Regulations and Supplement (Corrective Action, Hearing & Appellate Review Procedure) shall be adopted at a regular meeting of The Medical and Dental Staff and shall replace any Bylaws, Rules and Regulations and shall become effective when adopted by the Board of Trustees of the Hospital. *They shall, when adopted and approved, be equally binding on the Board of Trustees and Medical and Dental Staff.* [Emphasis supplied.]"

Record at 408. Representatives of the Board of Trustees signed these bylaws in 1978. The Board of Trustees of Regional has clearly evidenced its intent to be bound by the provisions of the bylaws. The fact that Dr. El-Issa agreed to be bound by "current hospital policies" and that the Board had final authority in the management of the hospital does not permit the appellants to escape their promise to be bound by the provisions of the hospital.

■ Finally, Regional argues that there is a lack of mutuality of obligation. Indiana law on this issue is well settled. There must exist mutual obligations under an agreement before it will be treated as a valid enforceable contract. *Marksill Specialties, Inc. v. Barger,* (1981) Ind.App., 428 N.E.2d 65, 69, *trans. denied.* If both parties to the argument are not bound, neither is bound. *Id.* However, the doctrine of mutuality of obligation does not require that every duty within an agreement be based upon a corresponding obligation. *Kokomo Veterans, Inc. v. Schick,* (1982) Ind.App., 439 N.E.2d 639, 645, *trans. denied.* Certainly a contract does not become unenforceable merely because the obligations of the parties differ in quality or quantity.

Regional bases its argument that the bylaws lack mutuality of obligation on the fact that they could not force Dr. El-Issa to maintain a practice at Regional. This is true. If Dr. El-Issa had wished to stop practicing at Regional completely the hospital would not have a right to seek legal or equitable remedies. However, as long as Dr. El-Issa was maintaining a surgical practice at Regional he was bound by the bylaws and current hospital policies. Among other things, the bylaws required Dr. El-Issa to participate in the operation of the Medical and Dental Staff by attending various hospital meetings, serving in representative capacities on committees and staff positions, to participate in various quality assurance programs, and to participate in the emergency services on-call program at Regional. If Dr. El-Issa failed to meet these obligations, Regional could impose sanctions. The appellants have not demonstrated that there is a lack of mutuality of obligation.

*Issues Three and Four*

■ The appellants argue next that there was insufficient evidence presented at trial to support a finding by the jury that they failed to substantially comply with the bylaws causing Dr. El-Issa to suffer damages.[6] Our standard of review for

6. Our discussion of these issues is necessarily framed in the terms used by the trial court in instructing the jury. The court's Final Instruction No. 17 states in relevant part:

"Plaintiff has the burden of proving each of the following propositions by a preponderance of the evidence.

1. That the defendants failed to *substantially comply* with the provisions of the by-

sufficiency of the evidence claims is well settled. We will not reweigh the evidence or judge the credibility of the witnesses. *Trinity Lutheran Church, Inc. v. Miller,* (1983) Ind.App., 451 N.E.2d 1099, 1102, *trans. denied.* Rather, we look only to the evidence most favorable to the verdict. Only where there is a total failure of evidence or where the jury's verdict is contrary to uncontradicted evidence will it be reversed. *Id.* We think that there was insufficient evidence before the jury to support their finding that the appellants failed to substantially comply with the bylaws and thereby damaged Dr. El-Issa.

The Bylaws of the Medical and Dental Staff of Terre Haute Regional Hospital set out the procedures to be followed in requesting additional clinical privileges and in making application for reappointment to the staff. In addition, the bylaws, and the corrective action supplement to those bylaws, outline the procedure to be employed when a member of the staff does not agree with the recommendations made with regard to his requests for additional privileges or reappointment to the staff. Thus, a thorough understanding of these procedures is an essential prelude to a discussion of the issue raised by Regional and HCA.

Appointments to the Medical and Dental Staff of Regional are for a two year period beginning on July 1 of each even numbered year.[7] Applications are returned to the Administrator of Regional who, in timely fashion, collects and verifies the information. The applications are then transmitted to the chairman of each department in which the physician requests privileges. The chairman, or the department as a whole, reviews each application. Such a review is based on the applicant's "professional competence and clinical judgment, in the treatment of patients, his or her ethics and conduct, attendance at departmental meetings, participation in Staff affairs, and compliance with Hospital and Medical and Dental Staff Bylaws, Rules and Regulations." [8] Bylaws of the Medical and Dental Staff of Terre Haute Regional Hospital, art. v, § 3 d, Record at 409. Following this review, the department makes a written recommendation to the Executive Committee. If a curtailment of privileges is recommended, the department's reasons for taking such action must be included in the written report to the hospital's Executive Committee.

Whether the physician has requested additional clinical privileges or made application for reappointment to the medical staff, if the recommendation of the Executive Committee is adverse to the physician, the administrator must promptly notify the physician by certified mail return receipt requested. The applicant is then entitled to those rights which are set out in the Corrective Action Supplement to the bylaws. The practitioner is first entitled to a hearing before an ad hoc committee of the Medical and Dental Staff, if he so requests within 30 days of his receipt of notice of the adverse recommendation. Within ten days following the receipt of a request for an ad hoc hearing, the executive committee must arrange for a hearing date not less than 14 days or more than 21 days from the receipt of the request.[9] The notice is also required to include the subject matter

---

laws relating to the review of the plaintiff's request for privileges; and

 2. That the plaintiff suffered damages as a result of such failure. [Emphasis supplied.]" Record at 212.

**7.** Requests for additional privileges are subject to the same procedures employed in consideration of applications for reappointment to the staff.

**8.** The bylaws also require that reviews of privileges must be based on "the direct observation of care provided, review of the records of patients treated in this or other hospitals and re-

view of the records of the Medical and Dental Staff which document the evaluation of the member's participation in the delivery of medical care." Bylaws of the Medical and Dental Staff of Terre Haute Regional Hospital, art. VI, § c, Record at 409.

**9.** The ad hoc committee consists of five members chosen by the president of the Medical and Dental Staff. No staff member who has actively participated in the consideration of the adverse recommendation may be a member of this committee.

that was considered in making the adverse recommendation. Within three days following the final adjournment, the ad hoc committee must make a written report to the executive committee recommending confirmation, modification or rejection of the original executive committee recommendation. The affected practitioner may then seek "appellate review" by the Board of Trustees. This review must be conducted by the Board of Trustees or by a duly appointed Appellate Review Committee of the Board of Trustees of not less than three members. The affected practitioner shall have access to the report and record (and transcription, if any) of the ad hoc hearing committee and all other materials, favorable or unfavorable, that were considered in making the adverse recommendation or decision. If the appellate review is conducted by a committee of the Board of Trustees, they must either make a written report recommending that the Board of Trustees affirm, modify or reverse its prior decision, or refer the matter back to the executive committee. When the latter action is taken, it may include a request that the executive committee hold further hearings in an attempt to resolve the disputed issues. Within three days of the return of any subsequent executive committee recommendations, they must be presented to the whole Board of Trustees by the Board's committee for final action.

Doctor El-Issa made two requests for additional privileges at Regional. Each request required the invocation of the procedure discussed above. We will discuss these two requests separately.

In March, 1980, following a "short course" on the subject, Dr. El-Issa requested privileges in GI Endoscopy.[10] He asserts that two violations of the bylaws occurred during the consideration of this request for additional privileges. On March 10, 1980, the Department of Surgery recommended that Dr. El-Issa be given privileges in only one subspecialty of GI Endoscopy—gastroscopy. In addition, it was recommended that he be required to perform these procedures under the supervision of another doctor. This recommendation was not accompanied by written reasons supporting it as the bylaws require. The Department of Medicine's recommendation was submitted to the Executive Committee at its April 16, 1980, meeting by the department's chairman during his report of the departmental meeting. According to the minutes of the Executive Committee's meeting, they merely accepted the chairman's report. Record at 1334. Doctor El-Issa contends that the failure to provide him with notice at this time violated the bylaws.

[18] We find the two alleged violations of the bylaws asserted by Dr. El-Issa not to be supported by sufficient evidence in the record. The failure of the Department of Medicine to include a written statement of reasons for its adverse recommendation did not abridge any rights granted by the bylaws to Dr. El-Issa. That bylaw requirement is intended solely to facilitate a review of departmental recommendations by both the Executive Committee and the Hospital's Board of Trustees. It is not a procedural safeguard for the protection of those applying for additional privileges. "Ordinarily, a party can waive any right provided for his benefit by a contract ..." *Brown v. State*, (1941) 219 Ind. 251, 261, 37 N.E.2d 73, 77; 6 I.L.E. *Contracts* § 233 (1958); *see also Cook & Bernheimer Co. v. Hagedorn*, (1921) 82 Ind.App. 444, 452, 131 N.E. 788, 791, *trans. denied* (1925). Neither did the hospital's failure to send Dr. El-Issa written notice of the Executive

---

10. Doctor El-Issa's request for privileges in GI Endoscopy was apparently contained in a rather oblique letter to the hospital administrator dated March 6, 1980. That letter, in relevant part, stated:

"I have submitted to you the credentials for taking the course in G.I. Endoscopy, and I would like to apply for privileges to use these instruments. If you feel that this is not enough training to use these instruments, I would appreciate your letting me know the extent of training needed in order to acquire privileges in their use."

Record at 1320. The instrument Dr. El-Issa refers to in this letter is a $4,200 sigmoidoscope he purchased during the "short course."

Committee's action constitute a breach of the bylaws. The Executive Committee never took any action on the Department of Medicine's recommendation at its April 1980 meeting. It merely accepted the departmental report containing the recommendation. Doctor El-Issa was not entitled to any notice, under the terms of the bylaws, until the Executive Committee took some action that was adverse to his March 1980 request. He produced no evidence that this ever occurred. Consequently, we find no evidence in the record which supports the finding that the hospital failed to substantially comply with the bylaws when it considered Dr. El-Issa's request for additional privileges in GI Endoscopy.

Doctor El-Issa made a second request for various privileges including endoscopic privileges in June 1980, when he made application for reappointment to the Medical and Dental Staff of Regional. He asserts numerous breaches in the bylaws occurring during the hospital's consideration of his application. However, as our discussion below shows, Regional also substantially complied with the bylaws during consideration of this request for additional privileges.

On February 12, 1981, El-Issa met with a "Credentials Committee" composed of the chairman of the Department of Surgery and several members of the surgery department. One day after this meeting, the chairman of the Department of Surgery sent a letter to El-Issa, describing the privileges which he was recommending for El-Issa. In part, that letter of February 13, 1981 stated:

"3. The following privileges are recommended granted for procedures to be done under the supervision of staff physicians credentialed in these procedures to be appointed by the chairman of the Department of Surgery:

Cuidoscopy/Peritoneoscopy
Parotidectomy
Esophogogastroduodenoscopy
Neck—Radial Disection
Fiberoptic Bronchoscopy
Colonscopy—with Fiberoscope

Gastroscopy—with Fiberscope
Laparoscopy"

Record at 432. This letter was signed by Dr. Drake in his capacity as chairman of the Credentials Committee. Of course, the bylaws require the department or its chairman to consider the application for reappointment. No mention is made in the bylaws of a "Credentials Committee." Doctor El-Issa asserts, consequently, that to use such a committee to review his application was a violation of the bylaws. The bylaws permit the chairman of the department to conduct this review on his own. Thus, we fail to see how the use of a committee, chaired by him, to conduct the review could violate the terms of the bylaws. Instead, this process afforded Dr. El-Issa additional procedural safeguards to which he was not entitled under the bylaws.

Doctor El-Issa also contends that the Credentials Committee did not base its recommendation on the criteria set out in the bylaws. Specifically, he asserts that the recommendation was not based on direct observation of his surgical techniques nor was it based on a review of his treatment of patients in the past. However, it is clear from the record that Dr. El-Issa either had not performed the procedures granted to him with supervision in a number of years or had performed them so infrequently as to make direct observation impracticable. Obviously the committee could not consider information which did not exist. There is no evidence in the record that this committee, or any other reviewing authority, failed to consider the criteria listed in the bylaws on which information existed. It must also be remembered that Dr. El-Issa had more than an ample opportunity to present information relating to these criteria. Thus, any early failure to consider all available and relevant information certainly would have been cured at some point prior to the Board of Trustee's final determination.

On April 1, 1981, the Department of Surgery passed a motion to recommend privileges for Dr. El-Issa in accordance with the

recommendation of the Credentials Committee. No reasons were given for requiring supervision of Dr. El-Issa on several of the procedures he requested privileges for. The recommendation transmitted to the Executive Committee also did not include a written statement of reasons as required by the bylaws. As we stated earlier, this bylaw requirement enures solely to the benefit of the hospital. Regional was entitled to waive its enforcement if it so chose.

Doctor El-Issa also asserts that the bylaws were violated when Regional failed to promptly notify him of the Executive Committee's action on his application for reappointment to the Medical and Dental Staff. The minutes of the April 22, 1981, Executive Committee show the following entry:

"6. Sa'd El-Issa, M.D.—*Active Staff* Dr. El-Issa's request for reappointment to the active staff was presented. *Motion: The motion was made and seconded to recommend approval of Dr. El-Issa's request. The motion passed.*"

Record at 463. On May 26, 1981, more than a month after the Executive Committee action, the Administrator of Regional and the President of the Medical and Dental Staff sent El-Issa a letter informing him of the Executive Committee's recommendation and of El-Issa's rights under the bylaws. The bylaws require *prompt* notification of an adverse Executive Committee action. However, this evidence does not show that Regional failed to substantially comply with the bylaws. This is particularly true in light of the absence of any evidence that this short delay resulted in any prejudice to Dr. El-Issa's rights to appellate review.

Three days after receiving notice of the Executive Committee's adverse recommendation, Dr. El-Issa requested a review by an ad hoc committee as permitted under the bylaws. The ad hoc committee met on three separate occasions. Both the hospital and Dr. El-Issa were afforded an opportunity to present information bearing on this application for reappointment. At the conclusion of this hearing, Dr. El-Issa was offered the opportunity to submit further written evidence to support his request. He declined to do so. After deliberations, the ad hoc committee concluded that the issues in dispute were not resolved and recommended that the Executive Committee again meet with Dr. El-Issa and attempt to resolve their differences. Because this is not one of the three specific recommendations that the bylaws specifically permit the ad hoc committee to make, Dr. El-Issa argues that it constituted a violation of the bylaws. However, a careful analysis of the bylaws indicates that the ad hoc committee did in fact substantially comply with the bylaws when it reported its recommendation. The action they took was aimed at resolving the dispute with Dr. El-Issa in an ammicable and expeditious manner. It is clear from the language and structure of the bylaws that this was the central purpose behind the existence of the ad hoc committee. When they abandoned the literal formula contained in the bylaws in favor of a result which more accurately fulfilled their essential purpose they did substantially comply with the requirements of the bylaws.

Finally, Dr. El-Issa requested review by Regional's Board of Trustees. The board referred Dr. El-Issa's appeal to a subcommittee. Subsequently, however, the full board voted to reject the subcommittee's recommendation and adopt the recommendation initially made by the Executive Committee. Doctor El-Issa attempts to argue that by rejecting its own subcommittee's report, the board somehow violated the bylaws. However, he points us to no bylaw provision, and our own review of the bylaws found none, which would place such a restriction on the board.

If any breaches of the bylaws did occur, they were merely technical in nature. The Medical and Dental Staff Bylaws in force at Regional are designed to provide a staff member applying for privileges with certain basic procedural safeguards. In this case, Dr. El-Issa requested over one hundred privileges. Regional did not deny him any of those requested privileges. They only required him to be supervised on a

small percentage of those procedures requested, procedures which Dr. El-Issa had either not performed in a number of years or which he performed very rarely. This determination was made only after an extensive review procedure had been undertaken. It was not an arbitrary and capricious action on the part of Regional. After a painstaking review of the voluminous record in this case, we find no evidence that Regional failed to substantially comply with the essential provisions of the bylaws. However, even if there had been sufficient evidence to support a finding that Regional failed to substantially comply with the bylaws we would be required to reverse the judgment.

In a breach of contract action, only those damages proximately resulting from the breach are recoverable. *Finley v. Chain*, (1978) 176 Ind.App. 66, 77, 374 N.E.2d 67, 76. The evidence most favorable to the judgment shows that Dr. El-Issa's income decreased markedly beginning in 1981. It also shows that the granting of certain privileges with supervision *may* cause a physician to lose patient referrals from other physicians. However, the record reveals no evidence that Dr. El-Issa ever actually lost a patient referral because of the bylaw violations he alleges. It merely contains speculation about what might occur as a result of the final determination made by Regional. Consequently, there is not sufficient evidence to support a finding that Dr. El-Issa was damaged as a consequence of the bylaw violations he alleged.

For the foregoing reasons, the judgment of the trial court is reversed.

ROBERTSON, J., concurs.

NEAL, P.J., concurs with opinion.

NEAL, Presiding Judge, concurring.

I agree that the by-laws created a contractual relationship between Dr. El-Issa and Regional. I further agree that the procedure stated in the by-laws for processing his re-application for staff privileges was not followed. Nevertheless, through appellate review procedures El-Issa was af-

forded a full hearing and was given every opportunity to present his case. I liken this action to judicial review after exhaustion of administration remedies in decisions of administrative bodies such as police boards, school boards, full boards for workmen's compensation or review boards for employment security. The purpose of administrative appeals is to correct errors committed at lower stages and judicial review is to assess the action of the final level of the administrative action. Otherwise, there would be no point in having hierarchical administrative appeals as exist here. Since El-Issa was afforded a full hearing he was not harmed. The only remaining contention is whether such action was arbitrary and capricious. El-Issa was limited by the requirement of observation by other staff members to 9 out of 109 requested procedures. Some of the 9 procedures were new, some were old. We may not assess the wisdom of the medical staff decision, such is a judgment call. We may only decide if it was arbitrary and capricious. In my opinion, the decision was not arbitrary and capricious.

Relative to damages, El-Issa argues that because of the observation limitation imposed, a cloud was cast on his practice and he was slandered; people would tend to lose faith in him. Such is the basis for his argument to sustain his damages. He then shows there was a drop in his income. This theory is a tort, defamation, and not contract. I know of no rule which permits such damages for breach of contract. There was not one demonstrable incident which indicated that he lost one patient or one dollar because of not being permitted to practice, unobserved, those 9 procedures. Additionally, he was on the staff with full privileges at Union Hospital, also located in Terre Haute, Indiana. Therefore, the proof of damages is lacking. His theory of damages is wholly conjectural.