David B. KENNEDY, M.D. and David
B. Kennedy, M.D., Inc.,
Plaintiffs-Appellants,

v.

ST. JOSEPH MEMORIAL HOSPITAL
OF KOKOMO INDIANA, INC., Msgr.
Arthur A. Sego, Max M. Earl, M.D.,
Cyril E. Tetrick, W. John Hingst, Sister
Eugenia Latendresse, Robert J. Schultz,
Sister M. Clarise Winter, Sister Josita
O'Donnell, Sister Mary Ann Baumgart-
ner, and Sister M. Martin McEntee, De-
fendants-Appellees.

No. 2–1184A354.

Court of Appeals of Indiana,
First District.

Aug. 21, 1985.

Robert A. Garelick, Dennis F. McCrosson, Garelick, Cohen & Fishman, Indianapolis, for plaintiffs-appellants.

Geoffrey Segar, Myra C. Selby, Ice, Miller, Donadio & Ryan, Indianapolis, William P. O'Mahoney, Edward S. Mahoney, Lacey, O'Mahoney, Mahoney, Angel & Jessup, Kokomo, for defendants-appellees.

## STATEMENT OF THE CASE

NEAL, Judge.

David B. Kennedy, M.D. and David B. Kennedy, M.D., Inc. (Kennedy) appeal an adverse judgment rendered by the Howard Superior Court, without the intervention of a jury, in his suit arising out of a failure to renew his active staff membership status brought against St. Joseph Memorial Hospital of Kokomo, Indiana, Inc.; Msgr. Arthur A. Sego; Max M. Earl, M.D.; Cyril E. Tetrick; W. John Hingst; Sister Eugenia Latendresse; Robert J. Schultz; Sister M. Clarise Winter; Sister Josita O'Donnell; Sister Mary Ann Baumgartner; and Sister M. Martin McEntee (St. Joseph).

We affirm.

## ISSUES

Kennedy assigns seven issues for review. Issues one, two, three, four and seven all involve fundamental merits of the case and will be discussed together. Restated, the issues are:

I. Whether the hospital acted in an arbitrary and capricious manner when it failed to reappoint Kennedy to the active medical staff for the reason he had moved his personal residence from Russiaville, Indiana, to Cicero, Indiana, which the hospital considered too far away to enable him to render continuous medical care for his patients.

II. Whether the hospital violated its own by-laws by failing to submit the question of distance and contin-

uous medical care to the general medical staff.

III. Whether the trial court erred in excluding evidence of traveling time and distance of physicians on the staff at the Indiana University Medical Center Hospital in Indianapolis, Indiana.

## DISCUSSION AND DECISION

### Issue I: *Continuous Medical Care.*

St. Joseph, located in Howard County, Kokomo, Indiana, had in effect at all times the following bylaw and regulation:

"Article IV, Sec. 2 (defining categories of medical staff):

The active medical staff shall consist of physicians and dentists who have served the required period of probation of one (1) year as an associated staff member; who regularly admit patients to the hospital; *who in the judgment of the general medical staff, are located closely enough to the hospital to provide continuous care to their patients* and who assume all the functions and responsibilities of membership on the active medical staff...."
(Emphasis added).

Record at 441.

Rule and Regulation E-3 of the bylaws states:

"The physician or dentist (or his designated substitute) must visit each of his hospitalized patients at least once per day."

Record at 494.

Kennedy, a physician-psychiatrist, was admitted to the active medical staff of St. Joseph in March of 1980. At that time, he maintained an office in Kokomo, but resided in Russiaville. This residence is about ten miles from Kokomo, which necessitates a 10 or 15 minute drive to the hospital. (Kennedy claims 15 to 20 minutes). In July of 1981, while retaining his office in Kokomo, he moved his residence to Cicero in Hamilton County, a distance of about 26 miles from the hospital. This move increased his driving time to 40 to 45 min-

utes. (Kennedy claims 30 to 35 minutes). Kennedy's move prompted the executive committee of the medical staff to question whether he was in violation of Article IV, Sec. 2, concerning his ability to provide continuous coverage to patients. After an investigation and an exchange of letters, the executive committee recommended to the governing body that Kennedy's status be changed from active staff with the right to admit patients, to that of consulting staff which did not confer such right.

An appeal hearing by an ad hoc committee, provided for in the bylaws, and requested by Kennedy, was held. At that hearing the fact of the move was not disputed. Additionally, there was uncontested evidence presented that Kennedy's business manager, who was a minister, and also Kennedy's father-in-law, had made rounds of Kennedy's patients and had even written progress notes. This practice was instantly forbidden and stopped. Further, in a period from July 1982 to December 1982, Kennedy's daily visitation of patients was irregular in that out of 564 patient days, he had visited only 389, thereby omitting 175 patient day visitations. Physician-psychiatrists testified that a psychiatrist needs to be no more than 15 to 20 minutes from the hospital because of the potentiality of emergencies. It was stated that such emergencies could consist of suicide attempts, staff hostage seizures, assaults, escapes, and reactions to medication for blood pressure, seizures, or arrhyehena. Witnesses attributed part of Kennedy's irregular coverage, in violation of Rule E-3, to the increased distance.

Physicians, administrators, and individual psychiatrists testified that the rule was a prudent one, and was derived from a guide published by the Joint Commission of Accreditation of Hospitals. The rules have been uniformly enforced at St. Joseph whereby a number of physicians have been denied active staff membership. Hospital personnel, they testified, must have at all times the names of physicians who can respond at once to any need of a patient. Neither St. Joseph nor the staff questioned

Kennedy's competence, and such was not an issue.

Kennedy, in his testimony, argued that he had encountered no emergencies, and disputed the driving time. His justification of the violation of Rule E-3 was that psychiatric patients need not be visited every day, and as a matter of good psychiatric practice, should not be so visited. There is rarely a psychiatric emergency, he contended, and he has had none. While claiming he could adequately cover his patients from Cicero, Kennedy said that he did not put dangerous and suicidal patients in St. Joseph, but rather put them in St. Vincent's in Indianapolis. He argued that his coverage of patients was satisfactory, and that the treatment of psychiatric patients was different; therefore the hospital rules should not apply. He also asserted that his services were a benefit to the hospital and the community, economically and otherwise. Kennedy practiced at St. Joseph, St. Vincents in Indianapolis, in a clinic in Logansport, and once had an interest in a clinic in Anderson. One of his reasons for moving from Russiaville to Cicero was the increased availability to a satellite office he was developing in Indianapolis.

Ultimately, Kennedy's active staff privileges were demoted solely on the basis of his unavailability to the hospital to afford continuous care to his patients. Accordingly, Kennedy's principal argument is that the action of the governing body in denying him active staff privileges was arbitrary and capricious and not according to law when it determined that he lived too far from the hospital to render continuous patient care.

■ The decision of a hospital concerning staff privileges is accorded great deference. Judicial intervention is limited to an assessment of whether the proceedings employed by the hospital are fair, the standards set by the hospital are reasonable, and whether they have been applied arbitrarily and capriciously. *Kiracofe v. Reid Memorial Hospital,* (1984) Ind.App., 461 N.E.2d 1134; *Yarnell v. Sisters of St. Francis Health Service,* (1983) Ind.App.,

446 N.E.2d 359. A governing body has the power to make a final decision on the reappointment of a physician to staff privileges and is not bound by the recommendation of the medical board. *Yarnell, supra.* An action by an administrative agency is arbitrary and capricious if made in disregard of the facts and circumstances of the case without some basis which would lead a reasonable person to the same conclusion. *Indiana Civil Rights Commission v. Sutherland Lumber,* (1979) 182 Ind.App. 133, 394 N.E.2d 949. We may not substitute our judgment for that of the administrative agency. *Dale Bland Trucking, Inc. v. Calcar Quarries,* (1981) Ind.App., 417 N.E.2d 1157; *State ex rel. State v. Marion Superior Court,* (1979) 271 Ind. 374, 392 N.E.2d 1161.

■ The thrust of Kennedy's argument is a request that we accept his opinion as to what is good medical practice over the opinion of St. Joseph's and its witnesses. Kennedy clearly violated the hospital bylaws and rules, but argues that he should be exempt because they are not wise as applicable to him or his patients. We decline to posture as medical experts. The burden is upon Kennedy to prove arbitrary and capricious conduct, and he has failed.

In summary, there is nothing in the record which persuades us that the actions of the executive committee, ad hoc committee, or the governing body were arbitrary, capricious, not in accordance with the law, or were motivated by malice or ill feeling. It appears to us that the rule is reasonable, and was applied reasonably and uniformly. Kennedy agreed to be bound by the bylaws, rules and regulations. If they were unwise, or should not be applicable to psychiatric patients, he, as a staff member, should have sought to change them. Instead, he sought to ignore them.

Issue II. *Compliance With Bylaws.*

According to the bylaws, no model of clarity of expression, the medical staff consists of all physicians holding unlimited licenses to practice medicine who are privileged to attend patients in the hospital.

Article IV, Sec. 1 divides the medical staff into the categories of active, associate, courtesy, honorary and consulting. As relevant here, under Article IV, Sec. 2, the active staff members alone are permitted to admit patients in the hospital. As provided by Article IV, Sec. 6, a consulting staff member can attend patients only at the request of the attending physician and is not responsible for patient care. No distinction is drawn between medical specialties.

Article V provides for the appointment and reappointment of physicians to the medical staff. On original appointments, applications are required to be presented on forms approved by the governing body wherein the applicant acknowledges that he has read the bylaws and regulations and agrees to be bound by them. The application is submitted to the chief executive officer of the hospital who then transmits it to the executive committee for evaluation. After investigation the executive committee makes a report and recommendation to the general medical staff which is composed of all staff members. The general medical staff then makes a decision. If that decision is favorable, the recommendation is forwarded to the governing body, a board consisting of 10 members, who take action at their next regular meeting. If that decision is favorable, the physician is admitted and the matter is ended. However, the governing body may, if it chooses, refer the matter to the executive committee for further study. If the report of the executive committee is adverse, referral to the governing body is held in abeyance during which time the applicant may exercise administrative appeal rights under Article VIII.

Article VIII essentially provides for a full hearing before an ad hoc committee with a further appeal of that decision to the governing body. If the subsequent report of the executive committee is favorable, it is forwarded to the governing body who acts on it, and if that decision is favorable, the physician is admitted and the matter is ended.

If the recommendation of the general medical staff is adverse, such triggers the administrative appeal rights under Article VIII, as mentioned above, before the matter is sent to the governing body. If the recommendation continues to be adverse, such recommendation is sent to the governing body. Upon the receipt of the unfavorable recommendation by the governing body, the applicant again has the appeal rights under Article VIII.

Article III, Sec. 3(a) provides:

"Initial appointments and reappointments to the medical staff shall be made by the governing body. The governing body shall act on appointments and reappointments ... only after there has been a recommendation from the medical staff as provided by the bylaws...."

It has been held, and it is conceded by Kennedy, that the governing body alone has the power of staff appointments; all actions of the various staff and committees are merely recommendations. *See Yarnell, supra.* As noted above, the action of the general medical staff is an appealable decision. Final decisions are reserved for the governing body.

It is provided in Article V. Sec. 2(e):

"(1) If the final decision of the governing body is favorable to the physician or dentist, the chief executive officer shall so notify the chairman of the executive committee, the chief of the department concerned, and the physician or dentist.

(2) If the final decision of the governing body is adverse to the physician or dentist, such notice shall be sent to the chairman of the executive committee, to the chief of the department concerned, and by certified mail, return receipt requested, to the physician or dentist. The physician or dentist shall have the right to appeal in accordance with the procedures set forth in these bylaws, provided that if the denial is solely the act of the governing body without the concurrence of the executive committee, such appeal shall be held

before the governing body or a designated committee of the governing body."

However, the dispute here revolves around the *re*appointment procedure, which under Article V, Sec. 3, takes an entirely different track than the original appointment. This section provides:

"a. At least thirty (30) days prior to the final scheduled governing body meeting in each even year (e.g., 1980, 1982), the executive committee shall review all pertinent information available on each physician and dentist scheduled for periodic appraisal, for the purpose of determining its recommendation for reappointments to the medical staff and for the granting of clinical privileges for the ensuing period, and shall transmit its recommendations, in writing, to the governing body. Where non-reappointment or a change in clinical privileges is recommended, the reason for such recommendation shall be documented.

b. Each recommendation concerning the reappointment of a medical staff member and the clinical privileges to be granted upon reappointment shall be based upon each member's professional competence and clinical judgment in the treatment of patients, his ethics and conduct, his attendance at medical staff meetings and participation in staff affairs; his compliance with the hospital policies and the medical staff bylaws, rules and regulations; his cooperation with hospital personnel; his use of the hospital's facilities for his patients, his relations with other physicians and dentists; his general attitude toward patients, the hospital and the public; his participation in relevant continuing education programs; his timely completion of medical records; and his health status.

c. Thereafter, the procedures provided in Article V, Section 2, relating to

recommendations on applications for initial appointment shall be followed."

Kennedy argues that a hospital is bound to follow its bylaws when denying a physician privileges, and that the bylaws constitute a contract between the hospital and the staff. *Terre Haute Regional Hospital, Inc. v. El-Issa*, (1984) Ind.App., 470 N.E.2d 1371; *Yarnell, supra.* He then argues that Article IV, Sec. 2, requires a judgment by the general medical staff as to whether a physician is located closely enough to the hospital. Also, under Article V, Sec. 3(c) above, he contends the matter must be reviewed by the general medical staff as is done with initial appointments where a recommendation is made. Since this procedure was not followed, Kennedy alleges the procedure is faulty, and the case must be reversed.

We have examined the record concerning the procedure followed and find the bylaws ambiguous. The well known rules of construction require that we determine the intent expressed in a contract, such intent being drawn from all four corners of the instrument. We are of the opinion that the decision of the governing body and the trial court can be sustained for a number of reasons set out below.

*Construction of the Bylaws.* As noted above, since the *re*appointment procedure under Article V, Sec. 3 is altogether different from that of the separately provided for initial appointment procedure, a different method is obviously intended. On reappointment proceedings, solely the executive committee, without reapplication, automatically and bi-annually determines the reappointment of staff privileges to physicians. The executive committee then transmits "its recommendations in writing to the governing body". Absent are the requirements of an application, the executive committee transmitting its recommendation to the general medical staff, and the various appeal and procedural steps mentioned above. However, Kennedy argues that subsection (3)(c) incorporates all of Article V., Sec. 2. In other words, he contends

that the proceedings for an initial appointment are to be repeated in the reappointment procedures. An examination of Subsection c, which is placed immediately after the requirement that the executive committee forward its recommendation directly to the governing body, shows that it then states: *"Thereafter, the procedures provided in Article V, Section 2, relating to recommendations on applications for initial appointment shall be followed"*. The sequence of the procedure followed by the word "thereafter" suggests the meaning that Article V, Sec. 2 is applicable in reappointments only as to procedures specified after the initial receipt of the recommendation by the governing body. As shown above, after all of the preliminary steps are exhausted and the governing body receives the recommendation, it may (1) approve it; (2) refer it back to the executive committee for further consideration; (3) send it to a joint conference committee; or (4) deny it which then triggers an administrative appeal process under Article VIII followed by an appeal to the governing body. A recommendation from the general medical staff is only an appealable decision.

Any interpretation which incorporates all of Article V, Sec. 2 nullifies Section 3. Our construction gives effect to Section 3, harmonizes it as much as possible with Section 2, and gives meaning to the word "thereafter".

*Construction placed on bylaws by the parties.* Sister M. Martin McEntee testified that the procedure followed in this case was according to the bylaws and the practice. She stated the executive committee examined Kennedy's reappointment and made recommendations directly to the governing body, bypassing the general medical staff. The general medical staff takes action on initial applications and the executive committee is responsible for reappointments.

The record shows that Kennedy was advised in November 1982, that the question of his residence and ability to provide continuous medical care would be considered in whether to renew his active staff privileges. He was asked to respond and did. An investigation and inquiries were made by the executive committee, and opinions were solicited from other psychiatrists and physicians. Without reference to the general medical staff, the executive committee ultimately concluded Kennedy lived too far, time-wise, from the hospital and made recommendations that his active staff privileges be reduced to consulting staff status. He was notified of this decision and that he had a right to utilize the appeal procedures under Article VIII. Thereupon Kennedy (1) requested a hearing before an ad hoc committee; and (2) pursued his appeal to the governing body. Kennedy made no request for a submission of the question to the general medical staff, nor did he voice any objection to the procedure followed.

Bylaws are a contract. *El-Issa, supra.* In cases of ambiguity in contracts, each party must be held to a construction which his own conduct has placed upon it. Such conduct is entitled to great, if not controlling weight and influence. *Pierce v. Yochum,* (1975) 164 Ind.App. 443, 330 N.E.2d 102; *Oxford Development Corp. v. Rausauer Builders, Inc.,* (1973) 158 Ind. App. 622, 304 N.E.2d 211; *Lacy v. White,* (1972) 153 Ind.App. 504, 288 N.E.2d 178; *Bollman v. Indianapolis Machinery Co.,* (1972) 150 Ind.App. 465, 276 N.E.2d 606; *Clark Mutual Life Ins. Co. v. Lewis,* (1966) 139 Ind.App. 230, 217 N.E.2d 853.

*Waiver.* An examination of the record revealed that at no time, from November 1982 until he filed this lawsuit, did Kennedy voice any objection to the procedure followed. At the hearing before the ad hoc committee, requested by Kennedy, he was present in person and with counsel as well. At the onset, Dr. Adler, who presided, noted:

"It was my understanding that Dr. Kennedy did follow the appropriate appeal process and no problems at that point. So we are at the point of actual hearing of both sides of the case."

To this statement by Dr. Adler, no response, objection or statement was made by Kennedy or his counsel concerning fail-

ure of the hospital to follow its bylaws by referring the matter to the general medical staff. Further, there was no mention of the matter in the transcript of the hearing before the ad hoc committee, or the later appeal to the governing body. It is fundamental in our system of jurisprudence that a litigant may not request a procedure, or submit to a procedure without objection, and then claim the same to be erroneous. Such results in a waiver. This rule has been applied to medical staff procedures. *See Duffield v. Charleston Area Medical Center,* (4th Cir.1974) 503 F.2d 512; *El-Issa, supra; Renforth v. Fayette Memorial Hospital Assn., Inc.,* (1978) 178 Ind.App. 475, 383 N.E.2d 368. As stated in *El-Issa, supra,* certain bylaw requirements concerning staff appointment reviews "[are] intended solely to facilitate review of departmental recommendations by both the executive committee and the hospital board of trustees."

█ *Fair Hearing.* In the concurring opinion of *Terre Haute Regional Hospital, Inc. v. El-Issa, supra,* we noted that the appeal procedures of hospital bylaws were likened to administrative appeals in police, school, industrial board and review board cases for employment security. The purpose of administrative appeals is to correct errors committed at lower stages. Judicial review is concerned with the final level of the administrative action. Permitting a claimant in judicial review to reach back into the lower stages of the administrative hearing to raise errors would render the administrative appeal process pointless.

█ The governing body alone has the power of staff appointments, and all action by the medical staff and committees are merely recommendations. *Yarnell, supra.* Here, a complete hearing was held before an ad hoc committee where Kennedy, after notice, appeared with counsel, cross-examined and presented witnesses, and made arguments. This record was brought before the governing body on appeal. We are not advised of any material evidence omitted. The governing body, with the sole power of decision, had before it all

material matters. Kennedy had due process.

Issue III: *Exclusion of Testimony.*

Kennedy offered evidence at the trial, but not at the hearing before the ad hoc committee, that 55 physicians practicing at the Indiana University Medical Center Hospital in Indianapolis lived further away and required more time to travel to this hospital than was required of him to travel from Cicero to St. Joseph. The trial judge sustained the Hospital's objections to the evidence because the situation in Indianapolis was not the same. "Indianapolis is a large metropolitan area with differences in graphics, geography, [and] differences in transportation possibilities. It is in no way related or similar to the situation in question. It is not material." Record at 672.

█ The relevancy of offered evidence is addressed to the sound discretion of the trial court. *Pilkington v. Hendricks County Rural Electric Membership,* (1984) Ind.App., 460 N.E.2d 1000. The standards for determining relevancy of evidence is whether the evidence in question has a logical tendency to prove a material fact. *In re Marriage of Gray,* (1981) Ind.App., 422 N.E.2d 696.

█ Indiana University Medical Center is a teaching hospital in a large metropolitan area and is staffed with interns, residents, and a regular medical staff. We are not told what its bylaws permit. The issue here is whether the bylaws and regulations of St. Joseph are unreasonable, or whether the application thereof was arbitrary and capricious. We do not perceive that the opinion of one hospital differing from another or our opinion differing from that of St. Joseph's makes its bylaws or the application thereof arbitrary and capricious. We fail to see how the exclusion of the evidence affected this outcome.

For the above reasons, this cause is affirmed.

Judgment affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.